UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | 3:06cr120(SRU) |
| RAUL REYES, JR. | |

RULING ON MOTIONS TO SUPPRESS

While the defendant, Raul Reyes, Jr., was on vacation with his family in Florida, several federal agents entered Reyes's hotel room and executed a warrant for Reyes's arrest on drug conspiracy charges. After placing Reyes in custody, one agent interrogated Reyes without advising him of his *Miranda* rights. As a result of the interrogation, Reyes made several incriminating statements and gave the agents consent to search his hotel room and his vehicle. Upon a search of the room and vehicle, agents found and removed several pieces of physical evidence. Reyes now moves to suppress the statements and the physical evidence. For reasons that follow, Reyes's motion to suppress statements is granted and Reyes's motion to suppress physical evidence is denied.

I.     Background

The following facts are derived from Reyes's affidavit and from Drug Enforcement Administration ("DEA") Special Agent Carlos Perez's testimony during a hearing on the instant motion. On April 19, 2006, Reyes was on vacation with his wife and children in Orlando, Florida, and was staying in the Quality Inn Plaza Hotel. At approximately 7:15 a.m., several DEA agents approached Reyes's hotel room to execute a warrant for Reyes's arrest on drug conspiracy charges. The agents knocked on the door, but there was no answer at first. Agent Perez then went to the main desk at the hotel and telephoned Reyes's hotel room. A woman

answered the phone and Perez hung up.  As Agent Perez was leaving the office to return to Reyes's room, from a distance, he saw Reyes's hotel room door open.  Several DEA agents entered Reyes's hotel room with their weapons drawn and apprehended Reyes.  Agents then "swept" the hotel room.

When Agent Perez reached Reyes's hotel room, Reyes was handcuffed with his hands behind his back.  Reyes was wearing only his underwear.  The hotel room was a typical Florida hotel room: very small.  Including Agent Perez, there were five agents in the room.  Agent Perez informed Reyes that he was executing a warrant for Reyes's arrest, but did not advise Reyes of his *Miranda* rights.  Perez then began to question Reyes.  He first asked Reyes for identification, which Reyes provided to him.  Perez then asked Reyes if he had any weapons, drugs or money in his room or in his vehicle.  Perez asked the question, in part, for investigative purposes.  Reyes replied, "no, you can search." T.R. at 34.  Agent Perez testified that "maybe a minute later, I can't recall what the lapse of time was, then [Reyes] said, well, I have money in the car." T.R. at 34.  When asked about the rough time frame of the conversation and the lapse of time between his question and Reyes's admission about the money, Agent Perez commented that it was "rapid, it's moving.  Between the time I asked him that question, he was trying to . . . get his pants on, so he was talking to his wife as well.  He was asking us 'can I get my pants on?'  We obviously said yes . . . and then he advised that he had currency in the vehicle.  Time lapse was . . . maybe a minute, so I can't tell.  I didn't have my eye on the clock really." T.R. at 35.  Agent Perez then asked Reyes if he could search his vehicle for the currency and Reyes gave his consent.  Reyes informed the DEA agents that the money was hidden in the vehicle's vent and instructed the agents how to extract the currency.  It involved removing two screws from the vehicle's

ventilation system. Agent Perez testified, and the government has argued, that Reyes's statements about the money in the car were not in response to the questions that Agent Perez asked him.

The agents then searched the vehicle. Pursuant to Reyes's instructions, they removed the screws on the vehicle's air conditioning vent and found a bundle of cash wrapped in a rubber band stashed in a void in the ventilation system. The agents also removed some paperwork and some keys.

Reyes also consented to a search of his hotel room for weapons, money or currency. Agents searched the room and removed two cellular telephones that were located in plain view on a table. At around 8:00 a.m., after searching and removing the evidence from Reyes's hotel room and his vehicle, and after eliciting the incriminating statements, Agent Perez advised Reyes of his *Miranda* rights. Reyes immediately invoked his rights.

Reyes now moves to suppress all statements he made before he was advised of his *Miranda* rights and all physical evidence that the DEA agents removed from his vehicle and his hotel room. These issues are considered in turn.

**II.     Discussion**

    A.     Statements

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." *Id*. Under *Miranda v. Arizona*, 384 U.S. 436 (1966), "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id*. at 444. Among the procedural

safeguards is the requirement that, prior to the interrogation, the defendant be given, in substance, the following warning: "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."  Id. at 479.  "The appropriate remedy for violations of Miranda rights is exclusion of the evidence at trial."  *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003).

The central inquiry in determining whether a suspect's *Miranda* rights were triggered is whether the defendant rendered the statement during the course of a "custodial interrogation." *Miranda*, 384 U.S. at 482.  "A person is in custody for purposes of *Miranda* if a reasonable person in the suspect's shoes would not have felt free to leave under the circumstances." *United States v. Ali*, 86 F.3d 275, 276 (2d Cir. 1996) (internal citation omitted).  "Even without an actual arrest, an accused is in custody when law enforcement officials act or speak in a manner that conveys the message that they would not permit the accused to leave."  *United States v. Badmus*, 325 F.3d 133, 138 (2d Cir. 2003) (internal quotations omitted).  The test of whether a suspect is in custody is an objective one, and courts consider whether a reasonable person in the defendant's position would believe he was in custody.  *Gordon v. Mantello*, 155 Fed. Appx. 562, 564 (2d Cir. 2005).

A person is being "interrogated" for purposes of *Miranda* if the police engage the person in "express questioning or its functional equivalent."  *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980).  The Supreme Court further explained that "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are

reasonably likely to elicit an incriminating response from the suspect." *Id*. at 301.

In this case, the "custody" requirement is clearly met. Agent Perez told Reyes that he was executing a warrant for his arrest and that "a reasonable person [in Reyes's position] would have believed he was under arrest." T.R. at 63. When Perez began the interrogation, Reyes was handcuffed and had just been apprehended by several armed DEA agents who were still in the hotel room. A reasonable person would clearly not have felt free to terminate the encounter.

The "interrogation" requirement is also met here. Agent Perez admittedly engaged in "express questioning or its functional equivalent." He asked Reyes a direct question, "do you have any drugs, guns or money." That question explicitly calls for, and is likely to elicit, an incriminating response. In fact, Agent Perez even testified that he had a specific investigative purpose for asking the question.

The government argues, however, that Reyes's statement, "I have money in the car," was not made in response to Agent Perez's question because of the brief time gap between the question and the response. The time gap between the question and the response, however, was small: only a minute at most. A custodial interrogation does not cease to be a custodial interrogation because of a brief pause between an interrogator's question and the suspect's response. In addition, the brief pause, in this case, did not break the causal link between Agent Perez's question and Reyes's response. Reyes's statement, "I have money in the car," was directly responsive to the specific question that Agent Perez asked. There is nothing to suggest that Reyes would have made any statement about what was in the vehicle had Agent Perez not asked his question.

Agent Perez thus engaged in a custodial interrogation without advising Reyes of his

*Miranda* rights, and Reyes's incriminating response was the direct result of that custodial interrogation. The government may not use at trial any statements Reyes made prior to the receipt of his *Miranda* warnings in its case in chief.

The government may, however, use Reyes's statements for impeachment purposes. The Supreme Court in *United States v. Patane*, 542 U.S. 630, 639 (2004), held that "the *Miranda* rule creates a presumption of coercion, in the absence of specific warnings, that is generally irrebuttable for purposes of the prosecution's case in chief." *Id*. at 639. Because *Miranda* is a prophylactic rule that "necessarily sweep[s] beyond the actual protections of the Self-Incrimination Clause," however, any further extension of *Miranda* must be "justified by its necessity for the protection of the actual right against compelled self-incrimination." *Id*. (citations omitted). Thus, "statements taken without Miranda warnings (though not actually compelled) can be used to impeach a defendant's testimony at trial." *Id*. (citations omitted).

  B  <u>Physical Evidence</u>

Warrantless searches "are per se unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception is where an individual gives an agent consent to search. The Supreme Court has observed, however, that "when a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). The government must prove the voluntariness of a suspect's consent to search by a preponderance of the evidence. *United States v. Calvente*, 722 F.2d 1019, 1023 (2d Cir. 1983).

Consent is voluntary if it "was the product of a free and deliberate choice rather than

intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Whether a suspect gave his consent voluntarily is a fact-intensive inquiry that courts determine by the "totality of all the circumstances." *United States v. Isiofia*, 370 F.3d 226, 230-31 (2d Cir. 2004) (citations omitted). Courts consider the defendant's "age, education, intelligence, length of detention," the government's "use of physical punishments or deprivations," and "whether the alleged consenting person was advised of his constitutional rights."[1] *United States v. Puglisi*, 790 F.2d 240, 243 (2d Cir. 1986). In addition, the Second Circuit "has found, in cases where consent is obtained from a person in custody, that whether guns were drawn or the consenting individual was frisked . . . or whether the consenting individual was threatened, was in a public area, or was informed that he had the option of refusing consent to the search . . . [are] relevant factors in determining the voluntariness of the consent." *Id*. at 243-44 (citations omitted). "[T]he fact that a defendant is in custody does not alone vitiate his consent to a search," but "consent to search obtained from a person in custody does require more careful scrutiny." *Id*. at 243 (citations omitted). A suspect's consent is not voluntary when the suspect merely acquiesces and submits to "apparent lawful authority." *United States v. Sanchez*, 635 F.2d 47, 59 (2d Cir. 1980). "The ultimate question presented is whether the officer had a reasonable basis for believing that there had been consent to the search." *United States v. Garcia*, 56 F.3d 418, 423 (2d Cir. 1995) (quotations and citations omitted).

---

[1] In this case, Perez obviously violated Reyes's *Miranda* rights. The *Miranda* rule, however, is only "a prophylactic employed to protect against violations of the *Self-Incrimination Clause*." *Patane*, 542 U.S. 636 (emphasis in original). The *Patane* Court continued, "[t]he Self-Incrimination Clause . . . is not implicated by the admission into evidence of the physical fruit of a voluntary statement. Accordingly, there is no justification for extending the *Miranda* rule to this context." *Id*. Thus, in this case, there is "no reason to apply the 'fruit of the poisonous tree' doctrine of *Wong Sun*," *Patane*, 542 U.S. at 642.

Several "voluntariness" factors weigh in Reyes's favor. Although neither party presented evidence about Reyes's age, intelligence, level of education or prior experience with law enforcement, the agents did not inform Reyes of his right to refuse consent or of his *Miranda* rights. The agents had their guns drawn when they entered the room and apprehended Reyes only minutes before Agent Perez asked Reyes for consent to search. At the time, Reyes was handcuffed with his hands behind his back sitting on a bed in his underwear – indeed, there was presumably no need for agents to frisk him. He was not in his home, or in a public place, but in a very small hotel room surrounded by five armed DEA agents.

Nevertheless, the agents did not deceive, intimidate or coerce Reyes into giving his consent to search the hotel room and the vehicle. In this case, Reyes twice gave valid consent. When he first gave it, Reyes actually volunteered his consent without even being prompted. Specifically, Agent Perez asked Reyes only if he had any drugs, guns or money, but Reyes responded, "no, you can search." In addition, later in the interrogation, after Reyes admitted he had money in the car, Agent Perez explicitly asked Reyes for his consent to search the hotel room and the vehicle, to which Reyes responded affirmatively. Agent Perez's question was not threatening, and was not intended to deceive Reyes about whether the Agent Perez had the lawful authority to search. Because Reyes gave his consent without even being prompted, and because Agent Perez did not coerce, intimidate, or trick Reyes into believing he had the lawful authority to search, Reyes's consent to search the hotel room and vehicle was voluntary.

Reyes argues, in the alternative, that the DEA agents exceeded the scope of his consent to search. At the outset, it is important to note that the scope of consent is a limitation on where an agent may search, not what items an agent may seize. *See* WAYNE R. LAFAVE, 1 SEARCH AND

SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 8.1(c), p. 35 (Fourth Ed. 2004) ("LAFAVE") ("Just as in a search warrant case, a description of the objects to be sought in the search limits the intensity of the search, but does not bar the seizure of other incriminating items found in the course of an appropriately limited search."). As long as the officers performed an otherwise constitutional search, as the agents performed in this case, "it is of no constitutional moment that the object found was not what was sought." *United States v. $557,933.89, More or less, in United States Funds*, 287 F.3d 66, 82 (2d Cir. 2002). In fact, "that lack of relationship always exists with regard to action validated under the 'plain view' doctrine." *Id*. Therefore, in this case, Reyes's limitation of the search to money would thus not necessarily preclude the agents from seizing the other items. *See* LAFAVE at § 8.1(c), p. 40 ("Courts are less likely to find a purported limitation to be an essential condition to the making of the search if, as a practical matter, full compliance with it would not have made any difference in terms of the degree of privacy invasion").

  Instead, Reyes's objection is not that the scope of the search itself was unconstitutional, but rather, that the seizures were unconstitutional. His objection rests on the premise that it could not have been immediately apparent to the agents that the objects, specifically, the paperwork, cellular telephones, and keys, were connected to criminal activity. The Supreme Court in *Warden v. Hayden*, 387 U.S. 294 (1967), articulated the test to determine whether unspecified items may be seized pursuant to a valid search. The *Hayden* Court held that there must be "a nexus . . . between the item to be seized and criminal behavior," and the agents must have "probable cause . . . to believe that the evidence sought will aid in a particular apprehension or conviction." *Id*. at 307. The Second Circuit has observed that, to seize an uspecified object, it

must be "immediately apparent that the object is connected with criminal activity." *United States v. $557,933.89*, 287 F.3d at 81. "Near certainty" of the object's criminal character, however, is not necessary. *United States v. Barrios-Moriera*, 872 F.2d 12, 17 (2d Cir. 1989).

In this case, the cellular telephones plainly fall within the standard. It was immediately apparent to Agent Perez, a trained DEA agent with over ten years of law enforcement experience, that cellular telephones contain caller logs, text messages, phone books and other information that would be highly relevant to a drug prosecution and would be very likely connected with criminal activity. He also knew that the defendant was accused of participating in a large drug conspiracy, and that wiretaps were involved. His seizure of the cellular telephones was thus entirely reasonable. *See United States v. Hernandez*, 738 F. Supp. 779, 783 (S.D.N.Y. 1990) (holding that an agent's seizure of a cellular telephone and beeper in plain view incident to the lawful arrest of an accused drug dealer was constitutional because "there was probable cause to believe they constituted evidence of a crime"); *see also United States v. Lazcano-Villalobos*, 175 F.3d 838, 844 (10th Cir. 1999) ("cellular telephones are recognized tools of the drug-dealing trade").

The keys and paperwork present a closer case. The parties did not submit any evidence about the contents of the papers or about whether the keys are otherwise incriminating. The parties also did not argue whether the keys and paperwork are connected with the drug trade or are otherwise relevant to this case. I thus cannot determine whether it was immediately apparent that they were connected with criminal activity. Consequently, I will reserve judgment on the admissibility of those items until they are offered into evidence at trial.

**III.    Conclusion**

For the foregoing reasons, Reyes's motion to suppress statements **(doc. #275)** is hereby GRANTED; the government may not offer Reyes's statements during its case in chief.  Reyes's motion to suppress physical evidence **(doc. #277)** is hereby DENIED without prejudice to renewal if and when the seized keys and paperwork are offered at trial.

It is so ordered.

Dated at Bridgeport, Connecticut, this 30th day of January 2007.

      /s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge